**HIRALDO P.A.**
Manuel Hiraldo, Esq.
(*pro hac vice* to be filed)
401 E. Las Olas Blvd., Suite 1400
Fort Lauderdale, FL 33301
MHiraldo@Hiraldolaw.com
Telephone: 954-400-4713

**EISENBAND LAW, P.A.**
Michael Eisenband
(*pro hac vice* to be filed)
MEisenband@Eisenbandlaw.com
515 E Las Olas Blvd, Suite 120
Fort Lauderdale, Florida 33301
Telephone: (954) 533-4092

**THE HARBOR LAW GROUP**
Kira M. Rubel, Esq.
Kira@theharborlawgorup.com
3615 Harborview Drive, NW, Suite C.
Gig Harbor, WA 98332-2129
Telephone: 253-251-2955

*Counsel for Plaintiff and Proposed Class*

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| DANIEL BABARE, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>vs.<br><br>MONEYGRAM PAYMENT SYSTEMS, INC.,<br><br>    *Defendant*. | Case No.<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. §§ 227, ET SEQ. (TCPA)**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

## CLASS ACTION COMPLAINT

Plaintiff Daniel Babare ("Plaintiff") brings this class action against Defendant Moneygram Payment Systems, Inc. ("Defendant") and alleges upon personal knowledge, experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action under the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.*, ("TCPA").

2. Defendant "is a global leader in cross-border P2P payments and money transfers. Its consumer-centric capabilities enable family and friends to quickly and affordably send money in more than 200 countries and territories, with over 70 countries now digitally enabled."[1]

3. At issue here is Defendant's transmission of text message solicitations advertising Defendant's goods and/or services.

4. Upon information and belief, Defendant caused thousands of unsolicited text messages to be sent to the cellular telephones of Plaintiff and Class Members, causing them injuries, including invasion of their privacy, aggravation, annoyance, intrusion on seclusion, trespass, and conversion.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, including any attempts by Defendant in the future to promote its services using unsolicited text messages. Plaintiff also seeks statutory damages on behalf of himself and the Class Members, as defined below, and any other available legal or equitable remedies resulting from the illegal actions of Defendants.

## PARTIES

6. Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39), a citizen and resident of Whatcom County, Washington.

---

[1] http://corporate.moneygram.com/about-moneygram?_ga=2.63710380.2003698856.1591637026-67978846.1590513610

7. Defendant is a Delaware corporation headquartered Dallas, TX.

**JURISDICTION AND VENUE**

8. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States.

9. This Court has subject matter jurisdiction over this action pursuant to 47 U.S.C. § 227(b)(3).

10. Defendant is subject to specific personal jurisdiction in Washington because Defendant initiated and directed, or caused to be initiated and directed by its agent(s), telemarketing and/or advertising text messages into Washington via an ATDS and without the requisite prior express written consent in violation of the TCPA. Specifically, Defendant initiated and directed, or caused to be initiated and directed by its agent(s), the transmission of unsolicited text messages to Plaintiff in Washington. Plaintiff received such messages while residing in and physically present in Washington.

11. Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1) because a substantial part of Defendant's actions and omissions which gave rise to the claims asserted in this action occurred, in part, in this District.

**THE TCPA**

12. The TCPA prohibits: (1) any person from calling a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent. 47 U.S.C. § 227(b)(1)(A).

13. The TCPA defines an "automatic telephone dialing system" ("ATDS") as "equipment that has the capacity - (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

14. It is a violation of the TCPA to make "any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any

3
**CLASS ACTION COMPLAINT**

automatic telephone dialing system … to any telephone number assigned to a … cellular telephone service ….” 47 U.S.C. § 227(b)(1)(A)(iii). "A text message to a cellular telephone qualifies as a 'call' within the meaning of the TCPA." *Thomas v. Peterson's Harley Davidson of Miami, L.L.C.*, 363 F. Supp. 3d 1368, 1371 (S.D. Fla. 2018).

15. The TCPA exists to prevent communications like the ones described within this Complaint. *See Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

16. In an action under the TCPA, a plaintiff must show only that the defendant "called a number assigned to a cellular telephone service using an automatic dialing system or prerecorded voice." *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1319 (S.D. Fla. 2012), *aff'd*, 755 F.3d 1265 (11th Cir. 2014).

17. The Federal Communications Commission ("FCC") is empowered to issue rules and regulations implementing the TCPA. According to the FCC's findings, calls in violation of the TCPA are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

18. A defendant must demonstrate that it (the defendant) obtained the plaintiff's prior express consent. *See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 30 FCC Rcd. 7961, 7991-92 (2015) (requiring express consent "for non-telemarketing and non-advertising calls"). Further, the FCC has issued rulings and clarified that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers. *See Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952 (9th Cir. 2009) ("The FCC has determined that a text message falls within the meaning of 'to make any call' in 47 U.S.C. § 227(b)(1)(A)").

**FACTS**

19. On or about March 19, 2020 and March 20, 2020 Defendant sent the following unsolicited text messages to Plaintiff's cellular telephone number:

> 620-57 >
>
> Text Message
> Thu, 19 Mar, 09:04
>
> MoneyGram: Thousands of new billers now available, pay bills online starting at $3.49. http://bit.ly/2vr8KsX Msg&Data rates may apply. MGISTOP to stop.
>
> Fri, 20 Mar, 16:53
>
> MoneyGram: NEW! Send for as low as $1.99* with FastSend! http://bit.ly/39nlyiz Msg&Data rates may apply. *FX may apply. MGISTOP to stop.

20. The purpose of the above text messages was to promote Defendant's goods and services, as is evident from the face of the text message. Additionally, the link contained within the text message is a link to Defendant's website, where Defendant further promotes its goods and services.

21. Plaintiff never provided Defendant with express <u>written</u> consent to be contacted using an ATDS on his cellular telephone.

22. Plaintiff did not otherwise invite the subject text message solicitations.

23. Plaintiff is the sole user and/or subscriber of the telephone number that received the above text message.

24. The number used by Defendant to transmit the subject text message solicitations (620-57) is known as a "short code." Short codes are short digit sequences, significantly shorter than telephone numbers, that are used to address messages in the Multimedia Messaging System and short message service systems of mobile network operators.

25. Text messages using a short code can only be sent using a computer, and cannot be

sent using a traditional telephone.

26. The impersonal and generic nature of the subject text messages, coupled with the fact that they originated from a short-code, demonstrates that Defendant utilized an automatic telephone dialing system in transmitting the messages.

27. To send the text messages, Defendant used a messaging platform (the "Platform") that permitted the transmission of thousands of automated text messages without any human involvement.

28. Upon information and belief, the Platform has the capacity to store telephone numbers.

29. Upon information and belief, the Platform has the capacity to generate sequential numbers.

30. Upon information and belief, the Platform has the capacity to dial numbers in sequential order.

31. Upon information and belief, the Platform has the capacity to dial numbers from a list of numbers.

32. Upon information and belief, the Platform has the capacity to dial numbers without human intervention, including an auto-reply function that operates by automatically transmitting text messages through an automation function.

33. Upon information and belief, the Platform also has a text message scheduling function.

34. Upon information and belief, to transmit the text messages at issue, the Platform automatically executed the following steps: [1] The Platform retrieved each telephone number from a list of numbers in the sequential order the numbers were listed; [2] The Platform then generated each number in the sequential order listed and combined each number with the content of Defendant's message to create "packets" consisting of one telephone number and the message content; [3] Each packet was then transmitted in the sequential order listed to an SMS aggregator, which acts an intermediary between the Platform, mobile carriers (e.g. AT&T), and consumers;

and [4] Upon receipt of each packet, the SMS aggregator transmitted each packet – automatically and with no human intervention – to the respective mobile carrier for the telephone number, again in the sequential order listed by Defendants. Each mobile carrier then sent the message to its customer's mobile telephone.

35. The above execution of instructions occurred seamlessly, with no human intervention, and almost instantaneously. Indeed, the Platform is capable of transmitting thousands of text messages following the above steps in minutes, if not less.

36. The subject text message solicitations invaded Plaintiff's privacy, intruded upon her seclusion and solitude, constituted a nuisance, and wasted Plaintiff's time by requiring them to interact with the messages.

## CLASS ALLEGATIONS

37. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, individually and on behalf of all others similarly situated.

### *PROPOSED CLASS*

38. Plaintiff brings this case on behalf of the following classes (collectively, the "Class"):

> **All persons within the United States who, within the four years prior to the filing of this lawsuit; were sent a text message; by or on behalf of Defendant; to said person's cellular telephone number; using the same text messaging platform utilized to text message Plaintiff; regarding Defendant's curbside and/or prescription delivery services.**

39. Defendant and its employees or agents are excluded from the Class.

40. Plaintiff does not know the number of members in the Class but believes the Class members number in the several thousands, if not more.

### *NUMEROSITY*

41. Upon information and belief, Defendant has placed automated calls to cellular telephone numbers belonging to thousands of consumers throughout the United States without

their prior express written consent. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

42. The exact number and identities of the Class members are unknown at this time and can be ascertained only through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendants' call records.

### *COMMON QUESTIONS OF LAW AND FACT*

43. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the Class are: [1] Whether Defendant made non-emergency calls to Plaintiff and the Class Members' cellular telephones using an ATDS; [2] Whether Defendant can meet its burden of showing that it obtained prior express written consent to make such calls; [3] Whether Defendant's conduct was knowing and willful; [4] Whether Defendants is liable for damages, including under theories of vicarious and/or joint venture liability; [5] The amount of such damages; and [5] Whether Defendant should be enjoined from such conduct in the future.

44. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant transmitted text messages to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### *TYPICALITY*

45. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories.

### *PROTECTING THE INTERESTS OF THE CLASS MEMBERS*

46. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### *SUPERIORITY*

47. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

48. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

## COUNT I
## VIOLATIONS OF 47 U.S.C. § 227(b)
*On Behalf of Plaintiff and the Class*

49. Plaintiff re-alleges and incorporates paragraphs 1-48 as if fully set forth herein.

50. Defendant utilized equipment having the capacity to store telephone numbers, using a random or sequential generator, and to dial such numbers and/or to dial numbers from a list automatically, without human intervention, to make non-emergency telephone calls to the cellular telephones of Plaintiff and the other members of the Class. These calls, or more precisely, *text messages*, were sent without regard to whether Defendant had first obtained express permission from the called party to send such text message. In fact, Defendant did not have prior express consent to text the cell phones of Plaintiff or the other members of the putative Class when such text messages were sent.

51. Defendant violated § 227(b)(1)(A)(iii) of the TCPA by using an automatic telephone dialing system to make non-emergency telephone calls to the cell phones of Plaintiff and the other members of the putative Class without their prior express written consent.

9
**CLASS ACTION COMPLAINT**

52.  As a result of Defendant's conduct and pursuant to § 227(b)(3) of the TCPA, Plaintiff and the other members of the class were harmed and are each entitled to a minimum of $500.00 in damages for each violation. Plaintiff and the class members are also entitled to an injunction against future calls. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of No Consent Class.

**WHEREFORE**, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class, and against Defendant that provides the following relief: **[1]** Statutory damages of $500 per violation, and up to $1,500 per violation if proven to be willful; **[2]** A permanent injunction prohibiting Defendant from violating the TCPA in the future through calling or texting cell phones using an automatic telephone dialing system; **[3]** A declaration that Defendant used an automatic telephone dialing system and violated the TCPA in using such to call or text the cell phones of Plaintiff and the No Consent Class; and **[4]** Any other relief the Court finds just and proper.

## JURY DEMAND

Plaintiff, respectfully, demands a trial by jury on all issues so triable.

DATED: June 9, 2020

Respectfully Submitted,

**THE HARBOR LAW GROUP**

Kira M. Rubel, Esq.
Kira@theharborlawgorup.com
3615 Harborview Drive, NW, Suite C.
Gig Harbor, WA 98332-2129
Telephone: 253-251-2955

**HIRALDO P.A.**
Manuel Hiraldo, Esq.
(*pro hac vice* to be filed)
401 E. Las Olas Blvd., Suite 1400

Fort Lauderdale, FL 33301
MHiraldo@Hiraldolaw.com
Telephone: 954-400-4713

**EISENBAND LAW, P.A.**
Michael Eisenband
(*pro hac vice* to be filed)
MEisenband@Eisenbandlaw.com
515 E Las Olas Blvd, Suite 120
Fort Lauderdale, Florida 33301
Telephone: (954) 533-4092

*Counsel for Plaintiff*

**CLASS ACTION COMPLAINT**